IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

CARLOS SIMON TIMMERMAN,

    **Plaintiff**

       v.                   **CIVIL NO.** 11-1816(JAG)

UNITED STATES OF AMERICA,

    **Defendant.**

**OPINION AND ORDER**

GARCIA-GREGORY, D.J.

    Before the Court stands the United States of America's ("USA") motion to dismiss Carlos Simon Timmerman's ("Simon") complaint. Simon filed his complaint pursuant to the Federal Tort Claims Act, 28 U.S.C. 2671 *et. seq.* ("FTCA"). For the reasons outlined below, the motion to dismiss is hereby **GRANTED**.

**BACKGROUND**

    Simon filed his complaint on August 18, 2011. USA filed its motion to dismiss on February 1, 2012. Simon timely opposed USA's motion to dismiss.

    Simon's complaint alleges that on August 11, 2009, he was negligently arrested by U.S. Immigration and Customs Enforcement ("ICE") agents at the Luis Munoz Marin Airport in San Juan, Puerto Rico. Simon further avers that he was negligently

Civil Case No. 11-1816 (JAG)                                                   2

prosecuted by the United States Attorney's Office for the District of Puerto Rico.

The complaint states that Simon was traveling from Venezuela to Puerto Rico and upon his arrival at the Luis Munoz Marin Airport he presented himself for admission into the United States. Simon was arrested by ICE officers for possession of DVD's depicting alleged female minors engaged in sexually explicit conduct. Simon avers that the customs agents took him to a detention facility, presented the case for prosecution, pursued and participated actively in the federal criminal case against him, and persisted in their attempt to convict him despite lacking evidence that there were minor females involved in the films.

Eight months after Simon's arrest an arrest warrant against him was issued. The arrest warrant was issued pursuant to an affidavit subscribed to by Alek Pacheco, an ICE agent. Simon states that the USA filed a motion for dismissal of the charges against him in light of the exculpatory evidence produced during his jury trial. Simon further states that ICE never interviewed any female in the DVD, nor contacted any females to verify their age and/or identity. The complaint states that USA relied on the guesswork of a retained expert who provided an opinion of the female's age.

Civil Case No. 11-1816 (JAG)                                    3

## STANDARD

Pursuant to Fed.R.Civ.P. 12(b)(1), a defendant may move to dismiss an action for lack of subject matter jurisdiction. As courts of limited jurisdiction, federal courts have the duty of narrowly construing jurisdictional grants. See e.g., Alicea-Rivera v. SIMED, 12 F.Supp.2d 243, 245 (D.P.R. 1998). Since federal courts have limited jurisdiction, the party asserting jurisdiction has the burden of demonstrating the existence of federal jurisdiction. See Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995); Droz Serrano v. Caribbean Records Inc., 270 F.Supp.2d 217 (D.P.R. 2003). When deciding whether to dismiss a complaint for lack of subject matter jurisdiction, the Court "may consider whatever evidence has been submitted, such as the depositions and exhibits submitted in this case." See Aversa v. United States, 99 F.3d 1200, 1210 (1st Cir. 1996). Motions brought under Rule 12(b)(1) are subject to the same standard of review as Rule 12(b)(6) motions. Torres Maysonet v. Drillex, S.E., 229 F.Supp.2d 105, 107 (D.P.R. 2002).

Rule 12(b)(1) is the proper vehicle for challenging a court's subject matter jurisdiction. Valentin v. Hospital Bella Vista, 254 F.3d 358, 362 (1st Cir. 2001). "This rule is a large umbrella, overspreading a variety of different types of challenges to subject-matter jurisdiction. Some challenges-those grounded in considerations of ripeness, mootness, sovereign

Civil Case No. 11-1816 (JAG)                                           4

immunity, and the existence of federal question jurisdiction are good examples." Id. at 362-363.

## ANALYSIS

The FTCA provides a "carefully limited waiver" of the federal government's sovereign immunity for certain claims alleging harm caused by United States employees or agents. Carroll v. U.S., 661 F.3d 87, 93 (1st Cir. 2011)(citing Bolduc v. United States, 402 F.3d 50, 62 (1st Cir. 2005)). Said waiver allows civil actions against the government "for injury or loss of property ... caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). The waiver also has exceptions and, where they apply, "the federal courts lack subject matter jurisdiction over torts against the United States." Wood v. United States, 290 F.3d 29, 36 n. 4 (1st Cir. 2002); Montijo-Reyes v. United States, 436 F.3d 19, 24 (1st Cir. 2006).

One of these exceptions is the discretionary function exception. The discretionary function exception bars:

> Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or

> not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a).

The Supreme Court has observed that the discretionary function exception "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." Carroll, 661 F.3d at 99 (citing United States v. S.A. Empresa De Viacao Aerea Rio Grandense (Varig Airlines), 467 U.S. 797, 808 (1984). "The exception, codified at 28 U.S.C. § 2680(a), immunizes conduct of government employees that arises from legislative and administrative decisions grounded in social, economic, and political policy, protecting against liability that would seriously handicap efficient government operations." Carroll, 661 F.3d at 99 (citing Wood, 290 F.3d at 36)(internal citations omitted). Said protection is available even when an employee has abused his or her discretion. Carroll, 661 F.3d at 99.

The applicability of the discretionary framework exception is determined according to a well-established two-tiered framework. Said exception applies if the conduct underlying the FTCA claim (1) "involves an element of judgment or choice, and

Civil Case No. 11-1816 (JAG)                                                                 6

(2) was susceptible to policy-related analysis." Sanchez ex rel. D.R.-S. v. U.S.,671 F.3d 86, 93 (1st Cir. 2012)(citing Limone v. United States, 579 F.3d 79, 101 (1st Cir.2009)(quoting Berkovitz v. United States, 486 U.S. 531, 536, (1988))(internal citations and quotation marks omitted). "Conduct does not involve an element of judgment or choice if a "'federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow,' because 'the employee has no rightful option but to adhere to the directive.'" Sanchez ex rel. D.R.-S., 671 F.3d at 93 (citing United States v. Gaubert, 499 U.S. 315, 322 (1991)). Furthermore, conduct is susceptible to policy analysis if some plausible policy justification could have undergirded the challenged conduct; it is not relevant whether the conduct was the end product of a policy-driven analysis. Sanchez ex rel. D.R.-S., 671 F.3d at 93 (citing Shansky v. United States, 164 F.3d 688, 692 (1st Cir. 1999)). Thus, a court must first identify the conduct alleged to have caused the harm and then determine whether the conduct can be fairly described as discretionary, and if so, decide whether the exercise or non-exercise of the granted discretion is actually or potentially influenced by policy considerations. Carroll, 661 F.3d at 100(citing Fothergill v. United States, 566 F.3d 248, 252 (1st Cir. 2009)).

Civil Case No. 11-1816 (JAG)                                          7

If the challenged conduct is both discretionary and policy-based, there is no subject-matter jurisdiction for the claim. Carroll, 661 F.3d at 100 (citing Montijo-Reyes, 436 F.3d at 24). First Circuit precedent places the burden on the plaintiff to show that discretionary conduct was not policy-driven and, thus falls outside the exception. Carroll, 661 F.3d at 100 n. 15 (citing Bolduc, 402 F.3d at 60, 62). However, the First Circuit has noted that there exists a circuit split as to whether the plaintiff or the government bears the burden of proof regarding the discretionary function exception. Carroll, 661 F.3d at 100(citing Hart v. United States, 630 F.3d 1085, 1089 n. 3 (8th Cir. 2011)).

In this case, Simon identifies the harmful conduct as the negligent investigation conducted by ICE agents, which caused criminal charges to be filed against him. More specifically, Simon states that government agents negligently investigated his case despite the fact that the videos they took from Simon included a disclaimer stating that the individuals depicted in the video were over the age of 18 and listed the website with the custodian of records. The agents' conduct does seem to involve an element of judgment or choice in not pursuing the information contained in the videos. However, the First Circuit has clearly established that decisions to investigate or prosecute an individual fall squarely within the discretionary

Civil Case No. 11-1816 (JAG)                                              8

function exception. Torres-Dueno v. U.S., 165 F.Supp.2d 71, 74 (D.P.R. 2001)(citing Horta v. Sullivan, 4 F.3d 2, 21 (1st Cir. 1993)("[A]lthough law enforcement agents have a mandatory duty to enforce the law, decisions as to how best to fulfill that duty are protected by the discretionary function exception to the FTCA."); Kelly v. United States, 924 F.2d 355, 362 (1st Cir. 1991)("Since decisions to investigate, or not, are at the core of law enforcement activity, the bureau chiefs' challenged conduct involved precisely the kind of policy-rooted decision-making that section 2680(a) was designed to safeguard."). Moreover, the decision regarding how to carry out the investigation is also protected. Torres-Dueno, 165 F.Supp. 2d at 74 (citing Horta, 4 F.3d at 21; Sloan v. United States Dep't of Hous. and Urban Dev., 236 F.3d 756, 762 (D.C. Cir. 2001)("[T]he sifting of evidence, the weighing of its significance, and the myriad other decisions made during investigations plainly involve elements of judgment and choice."); Sabow v. United States, 93 F.3d 1445, 1453 (9th Cir. 1996); Pooler v. United States, 787 F.2d 868, 871 (3rd Cir. 1986)("Congress did not intend to provide for judicial review of the quality of investigative efforts."); Doherty v. United States, 905 F.Supp. 54, 56–57 (D.Mass. 1995); Reeves v. United States, 809 F.Supp. 92, 95 (N.D.Ga. 1992), *aff'd*, 996 F.2d 1232 (11th Cir.1993) (Unpublished table case)). As a result, Simon's claims that ICE

Civil Case No. 11-1816 (JAG)                                                                                9

agents negligently investigated his case and handled evidence are barred by the discretionary function exception.

As a result of the foregoing, the Court **GRANTS** the USA's motion to dismiss.

## CONCLUSION

For the reasons explained above, USA's motion to dismiss is hereby **GRANTED**. Judgment shall be entered accordingly.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 5th day of June, 2012.

<u>S/ Jay A. Garcia-Gregory</u>
JAY A. GARCIA-GREGORY
United States District Judge